David N. Mark (WSBA No. 13908)
Law Office of David N. Mark
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel.: 206-340-1840; Fax: 206-340-1846

William J. Rutzick (WSBA No. 11533)
Kathy Goater (WSBA No. 9648)
Schroeter Goldmark & Bender
810 3rd Avenue, 5th Fl.
Seattle, WA 98104
Tel.: 206-622-8000; Fax: 206-682-2305

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE NUNEZ, et al., individually and as class representative,<br><br>Plaintiff,<br><br>v.<br><br>TYSON FRESH MEATS, INC.,<br><br>Defendants. | No. CV-06-5041-LRS<br><br>DECLARATION OF DAVID N. MARK IN SUPPORT OF MOTION RE CLASS SETTLEMENT |

I, David N. Mark, declare as follows:

1.    I am one of plaintiffs' counsel of record herein.

2.    Attached hereto are true and accurate copies of the following documents:

| | |
|---|---|
| Exhibit 1 | Class Action Settlements, with Allocation Plan attached |
| Exhibit 2 | Limitations Period Tolling agreement |
| Exhibit 3 | Proposed Notice of Settlement (including return post card) |

DEC. OF DAVID N. MARK … RE CLASS SETTLEMENT - 1

LAW OFFICE OF
DAVID N. MARK
CENTRAL BUILDING, SUITE 500
810 THIRD AVENUE
SEATTLE, WA 98104
(206) 340-1840  FAX (206) 340-1846

3.    The parties propose providing notice and distribution of settlement checks herein and in *Chavez* using methods that were approved and have proven successful in *Alvarez v. IBP*.  Notices will be mailed by first-class mail to last known addresses and class members who do not return the proposed information post-cards will be sent notices through the IRS Letter Forwarding Program.  In addition, plaintiffs' counsel will run undeliverable addresses through a credit report search for class members who have damages of more than $ 1,000 and have not responded to the notice or IRS letter. In *Alvarez,* plaintiffs have already had positive contact with class members accounting for over $ 8.2 of the $ 8.5 million in settlement funds, with almost two months remaining to hear from additional class members.  In addition, plaintiff have had considerable contact – with address confirmation – from many *Chavez* and *Nunez* plaintiffs, as part of the *Alvarez* distribution process.

4.    Class counsel and Mr. Nunez unanimously recommend that this Settlement be approved.  The *Chavez* class representatives, who include *Nunez* class members, also recommend approval of this agreement.  The settlement is recommended based on the risk/benefit analysis of litigation and delays in proceeding.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct and based on personal knowledge.

DEC. OF DAVID N. MARK ... RE CLASS SETTLEMENT - 2

LAW OFFICE OF
DAVID N. MARK
CENTRAL BUILDING, SUITE 500
810 THIRD AVENUE
SEATTLE, WA 98104
(206) 340-1840  FAX (206) 340-1846

1    Executed at Seattle, Washington, this _17__ day of April 2006.

2                                    /s/David N. Mark
                                    David N. Mark, WSBA #13908
3                                   Law Office of David N. Mark
                                    810 Third Avenue, Suite 500
4                                   Seattle, Washington 98104
                                    Tel:  (206) 340-1840; Fax:  (206) 340-1846
5                                   E-mail:  david@marklawoffice.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEC. OF DAVID N. MARK … RE CLASS SETTLEMENT - 3

LAW OFFICE OF
DAVID N. MARK
CENTRAL BUILDING, SUITE 500
810 THIRD AVENUE
SEATTLE, WA 98104
(206) 340-1840  FAX (206) 340-1846

id180103 5/4/06 5/5/06

**EXHIBIT 1**

## CLASS ACTIONS SETTLEMENT

1.      Plaintiffs[1] and defendants[2], by and through their undersigned attorneys, hereby enter into the following agreement for purposes of settlement, distribution of monies and future compliance in the following two class actions:

      a.     *Chavez et al. v. IBP et al.*, Case No. 01-5093 (E.D. Wa.)("*Chavez*")

      b.     *Nunez v. Tyson Fresh Meats, Inc.*, (not yet filed) (E.D.Wa.)("*Nunez*")

This agreement requires Court approval in each of the above actions and such approval is the condition subsequent to this agreement.

2.      This settlement will end all wage and hour litigation brought or presently contemplated by plaintiffs regarding the Pasco, Washington beef facility.

3.      Upon the parties signing this agreement, they will jointly request that the Ninth Circuit Court of Appeals enter an order which dismisses the Ninth Circuit appeal in *Chavez* without prejudice to reinstatement, while returning the case to the District Court for consideration of the parties' settlement agreement.

4.      Upon entry of the order of dismissal in the *Chavez* Ninth Circuit Appeal (discussed above), the parties will file the following documents in the United States District Court for the Eastern District of Washington:

      a)     *Chavez* Joint Motion and Memorandum for Preliminary and Final Approval of Class Settlement, in a form agreed to by the parties.

      b)     *Nunez*[3] complaint (to be filed by plaintiffs)

---

[1] "Plaintiffs" as used herein refers to the class representatives in each action, who, represented by counsel, represent the interest of all members of the class certified by the District Court in *Chavez* and to be certified in *Nunez*.
[2] Shortly prior to the filing of the *Chavez* case, IBP entered into a merger agreement with Tyson Foods, Inc. IBP plants, including the Pasco, Washington plant herein are now operated as part of Tyson Fresh Meats, Inc. IBP, Inc. no longer exists as a legal entity. The agreement herein is with Tyson Foods, Inc. and Tyson Fresh Meats, Inc., hereinafter referred to as "defendants."
[3] *Nunez* has been previously referred to by the parties as "*Pasco III*."

     c)    *Nunez* Joint Motion and Memorandum for Preliminary and Final Approval of Class Settlement .

     d)    *Nunez* Civil Cover Sheet indicating that it is a related case to *Chavez*.

5.    Defendants agree to pay $ 10,200,000 to the plaintiffs as their maximum liability in *Chavez* and *Nunez,* pursuant to the terms and conditions stated herein below.

6.    The plaintiffs propose distribution of the money to the *Chavez* and *Nunez* class members according to the Allocation Plan, attached hereto.  The Allocation Plan affects only the distribution of class proceeds as between the *Chavez* class, the *Nunez* class and the class attorneys, without affecting the rights and obligations of defendants.  Changes in the Allocation Plan, if any, shall be made only upon Court approval, with prior notice to defendants.  The Court shall not approve any proposed change to the extent it materially prejudices defendants.

7.    Within 10 days of the filing of this agreement with the court, defendants shall provide copies of documents to the governmental entities whom defendants deem prudent to provide notice pursuant to 28 U.S.C. § 1715.

8.    Within 10 days of the signing of this agreement, defendants shall provide to plaintiffs a unified class list in electronic format with the names, last known addresses and social security numbers of each member of the *Chavez* and *Nunez* classes.  The class list shall be unified in the sense that it shall be comprised of one record for each individual, with fields indicating whether the individual is a member of the *Chavez* and/or *Nunez* class.  Defendants will also provide their *Nunez* calculation reports.  The class lists, payroll records and reports shall be subject to the *Chavez* confidentiality order and used solely for purposes of the *Chavez* and *Nunez* litigation and shall not be shared with class representatives, class members or Teamster or any other labor organizations.

9.    The *Chavez* and *Nunez* joint motions for preliminary and final approval shall:

    a)    request a final hearing be scheduled in federal district court in Richland, Washington at the Court's earliest convenient date as soon as practicable after 90 days after defendants serve the 28 U.S.C. § 1715 notices provided for *supra*.

    b)    include proposed class action notices.

    10.    The condition subsequent to this Class Actions Settlement shall be deemed satisfied when there are final orders approving the settlements in *Chavez* and *Nunez* and the time for filing an appeal has passed without no appeals having been filed.  The date on which the condition subsequent is satisfied for both *Chavez* and *Nunez* is referred to herein as the "Settlement Implementation Date."  In the event an appeal is filed the settlement implementation date is suspended until final approval is obtained in appellate proceedings or on remand.  At the time of the final settlement hearing, Plaintiffs shall provide Defendants with a Preview List  for "First Round List Part A," which shall include class member names, social security numbers and addresses of class members as to whom plaintiffs have confirmed addresses at that time.  The purpose of this Preview List is to enable Defendants to get a head start on preparing the records it needs to produce First Round List Part A checks.

    11.    Within 10 business days of the "Settlement Implementation Date," plaintiffs shall provide defendants by email a "First Round List Part A" in Excel and pdf formats.  The individuals on this list shall be those *Chavez* and/or *Nunez* class members as to whom plaintiffs have confirmed addresses.  The "First Round List Part A" shall include each class member's name, social security number, and mailing address.  The "First Round List Part A" shall also list by each class member the amount that he or she is to receive in *Chavez*, with the amount divided into (i) the aggregate of wage components (*i.e.*, a consolidated figure for recovery on plaintiffs' minimum wage, overtime, rest break and double shift gap time claims) and (ii) the aggregate of

non-wage components (*i.e.,* liquidated/double damages, and pre-judgment interest). The "First Round List Part A" shall also list by each class member the amount that he or she is to receive in *Nunez*, with ½ of damages allocated to wages and ½ of damages allocated to non-wages (liquidated damages and double damages).

12.    Within 20 business days from receiving the "First Round List Part A" from plaintiffs, defendants shall provide plaintiffs' counsel with class member checks drawn on Defendants' account with "Wage/Hour Class Action" printed in the lower left corner in the same size type as Tyson appears on the check, as follows:

a)    one or more checks made payable to each class member on the "First Round List Part A," with the gross amounts equaling the amounts set forth on the "First Round List Part A" list,

b)    a check made payable to Schroeter Goldmark & Bender Trust Account in the amount of $ 1,500,000.

13.    Each check will include a notation that it is valid only for, and must be negotiated, within 90 days. Plaintiffs will be responsible for distributing the checks to the payees, and they may include correspondence from plaintiffs' counsel to accompany the checks. Plaintiffs will inform defendants of the date(s) the checks were distributed. Defendants will be responsible for calculating and remitting the employer's share of payroll taxes on the wage component (without expense to the class members) and deducting from the class members' wage component the employee's share of payroll taxes and required income tax withholding. No deductions will be taken from the non-wage components, except to the extent required by IRC § 3406 (regarding backup withholding). Defendants will report the wage component with an IRS W-2 form and the non-wage component with an IRS 1099 form.

14.    Within 10 business days after entry of an order or orders granting preliminary approval of both the *Chavez* and *Nunez* settlements, plaintiffs will commence the process of

attempting to locate class members pursuant to IRS Policy Statement P-1-187 and Revenue Procedure 94-22 (February 28, 1994). Plaintiffs will timely provide the IRS with appropriate forms and information throughout the process. The list of class members will include two "dummy" letters (one to an individual designated by defendants and one to an individual designated by plaintiff) so that the parties have knowledge of when the IRS performs the mailing. The IRS mailing will be deemed received on the day when plaintiffs' dummy receives the IRS letter or defendants' dummy notifies plaintiffs of receipt of the IRS letter, whichever occurs first. Within 60 days of the IRS's mailing, Plaintiffs will provide Defendants with a Preview List of the First Round List Part B, discussed *infra*. This Preview List shall include class member names, social security numbers and addresses of class members as to whom plaintiffs have obtained confirmed addresses after the First Round List Part A. The purpose of this Preview List is to enable Defendants to get a head start on preparing the records it needs for the First Round List Part B checks. Within 90 days after receipt of the IRS's mailing, plaintiffs will provide defendants with a list and Excel file for additional located class members in the same manner set forth in paragraph 11 described for the "First Round List Part A," *supra*. This second list shall be referred to as the "First Round List Part B." Within 20 business days of receiving this list, defendants will deliver to plaintiffs' counsel checks made out to each of the class members on the "First Round List Part B" in the same manner as described for the "First Round List Part A" *supra*. The plaintiffs may also include on the "First Round List Part B" requests for reissued checks for "First Round List Part A" individuals, if any, whose need reissued checks because of matters such as mistakes in identity, destroyed checks, and stolen checks, with such reissuance to occur consistent with defendants' normal policies and practices concerning check reissuance.

15.    Between 95 and 105 days from the delivery of the checks to the plaintiffs' counsel on the "First Round List Part B" list defendants will provide to plaintiffs' counsel a list of those class members whose checks from the First Round List Part A and First Round List Part B have not been negotiated (the "Uncashed Check List").

16.    Within 25 days after defendants provide plaintiffs' counsel the Uncashed Check List, defendants shall also provide plaintiffs' counsel with a check in the amount of 80% of the undistributed amount (amounts allocated to class members who do not appear on the First Round List Part A or First Round List Part B) and 80% of the amounts identified in the Uncashed Check List.

17.    Plaintiffs' counsel shall distribute the amount received pursuant to the prior paragraph in accordance with the procedure set forth in the Allocation Plan, attached hereto, as approved and/or modified by the District Court.

18.    Following defendants' compliance with all of the above provisions, plaintiffs will execute a Satisfaction of Judgment in favor of defendants in *Chavez* and *Nunez,* even though defendants will have paid less than the amount of the *Chavez* Judgment and may have paid less than $ 10,200,000.

19.    Commencing with the date that the District Court enters an order granting final approval of this settlement, defendants will pay employees at the Pasco facility the following number of additional donning, doffing and activity minutes in addition to line time:

a)    Processing straight-knife job codes:    11.0 minutes

b)    Slaughter straight-knife job codes:    10.0 minutes

c)    Hides straight-knife job codes for work in the basement room where the hides arrive from the slaughter floor:  10.0 minutes

d)    Hides main floor class jobs:    6.0 minutes

e)      All other class jobs in which employees are required to use equipment
        beyond the minimum equipment (frock, whites, hard hat, hair net, ear
        plugs, cotton gloves, meat hooks, lock and tag):      9.0 minutes

The parties agree that defendants may include in the above listed minutes the four minutes paid

under the "K" code (the "clothes" minutes added in 1998) and paid lunch minutes (*i.e.*, the five

minutes added to the meal period commencing September 15, 2003). The parties agree that

these minutes need to be paid only to the positions covered by the settlement agreement.

Defendants' obligation to pay additional minutes under this agreement will terminate 3 years

after the date the agreement receives final District Court approval.

20.      Payment of the above additional minutes in plaintiffs' view constitutes full future

compliance with the federal and state wage and hour rest break, meal break, pre-shift, meal break

and post-shift minutes litigated to judgment in *Alvarez v. IBP* and *Chavez* during the three year

period referenced above, provided no future changes are made at the Pasco facility which would

increase the amount of previously uncompensated time for these activities

21.      In connection with this Class Actions Settlement, the parties agree to seek Court

approval modifying paragraphs 9 and 10 of the Stipulation and Order Re Distribution and

Satisfaction of Judgment in *Alvarez v. IBP,* Case No. 98-5005 (December 20, 2005). Paragraph

9 relates to the Second Round Distribution therein. Paragraph 10 provides defendants will pay

for certain distribution expenses and attorney fees. Plaintiffs have agreed to delete Paragraph 10

in order to reach this settlement. As to Paragraph 9, plaintiffs seek to use plaintiffs' 50% share

of *Alvarez* paragraph 9 money to reimburse counsel for out-of-pocket *Alvarez* distribution

expenses and distribution fees that would have been covered under Paragraph 10, and to make

certain payments to individuals who present equities for being paid even though not entitled to

payment under the judgment.  Plaintiffs will file a motion in *Alvarez* to accomplish these

purposes, and defendants will not oppose the motion.

22.     The parties intend to meet their obligations under this agreement in a timely

manner and recognize that unforeseen or unnecessary delay is undesirable.

Dated this _____8th_____ day of May, 2006.


Schroeter Goldmark & Bender                    Akin Gump Strauss Hauer & Feld LLP

_____                      _____
William J. Rutzick                             Michael J. Mueller
Kathy Goater                                   Joel M. Cohn

Law Office of David N. Mark

_____
for  David N. Mark

# ALLOCATION PLAN

## Introduction

1.        This Allocation Plan is an attachment to the Class Actions Settlement ("Settlement") entered into between the parties in *Chavez et al. v. IBP et al.,* Case No. 01-5093 (E.D.Wa.) hereinafter ("*Chavez*") and *Nunez v. Tyson Fresh Meats, Inc.* (not yet filed)(E.D.Wa.)(hereinafter "*Nunez*").

2.        This Allocation Plan sets forth the formulae and procedures which plaintiffs will use to distribute the $ 10,200,000 maximum payment agreed to in the Settlement.

3.        *Nunez* will be filed promptly as a Pasco plant production line worker settlement class action after the signing of the Class Actions Settlement. *Nunez* covers two time periods:  1) from September 2002 until December 2003 for workers who were **not** eligible for membership in *Chavez* because they started their work *after* the May 2002 cutoff period for class membership eligibility and 2) from January 2, 2004 through the date the District Court grants final approval of the Settlement in both class actions.  To be a *Nunez* class member an individual must have started performing class work no later than May 6, 2006.  The class definition in *Nunez* will cover the same types of jobs as in *Chavez,* except that it will not include packaging department employees (Dept. 790 and 990), because packaging department employees do not have any viable *Nunez* claims.

## *Chavez* Class Member Allocation

4.        $ 8,400,000 will be allocated in the first instance to class member damages in *Chavez.*  If every *Chavez* class member were timely located according to the Settlement procedures, the class members would receive a pre-tax gross amount of $ 8,400,000.

5.      The $ 8,400,000 will be allocated to *Chavez* class members using the following steps:

1)      start with the *Chavez* Judgment 11/98 to 6/01 figures ($ 8,293,021)[1]

2)      add 78% of the Judgment 7/01 to 12/03 figures ($ 1,973,097 is 78% of $ 2,529,611)

3)      add 70% of the Judgment double shift figure ($ 418,072 is 70% of $ 597,245)

4)      Get the subtotal of steps 1 through 3 ($ 9,743,980)

5)      Calculate the non-opt-in reduction, *i.e.,* multiply by 22% the step 4 damages attributable to individuals as to whom FLSA consents are **not** filed with the Court (the parties estimate that non-opt-ins account for roughly 36% to 40% of the damages)

6)      Get the subtotal (step 4 minus step 5)

7)      The step 6 figure will be multiplied by a factor to make it equal $ 8,400,000, the *Chavez* Settlement fund

The page attached hereto illustrates the above calculations and includes a hypothetical class member example as a further illustration.

### *Nunez* Class Member Allocation

6.      *Nunez* covers two damage claim periods.  *See* paragraph 3 *supra.*  The first *Nunez* damages period (September 2002 to December 2003) will be allocated $ 100,000.  The second *Nunez* damages period (January 2004 to the date of final Court approval) will be allocated $ 200,000, which will be distributed only to straight knife users.  These damages will be divided taking into account the amount of work each class member has performed during the damages periods.

---

[1] This figure is derived from adding all "11/98-6/01" damages from the *Chavez* Judgment, as illustrated in the attachment hereto.  The *Chavez* Judgment is attached to the Mark Declaration filed with the motion for approval of the *Chavez* settlement.

**Paragraph 16 Monies**

7.      Subject to Court approval, plaintiffs will allocate the first $ 300,000 of plaintiffs'

Settlement Paragraph 16 money to attorney fees and expenses.  Additional Paragraph 16 money,

if any, will be allocated to class members in a manner approved of by the Court.  This is being

done to allocate a larger portion of the $ 10,200,000 in the first instance to the class members in

*Chavez* and *Nunez*.

Dated this ____4th____ day of May 2006.

Schroeter Goldmark & Bender

_William J. Rutzick_____
William J. Rutzick
Kathy Goater

Law Office of David N. Mark

_for David N. Mark_____
David N. Mark

| Judgment | 11/98 – 6/01 | 7/01 – 12/03 | Totals |
|---|---|---|---|
| MWA minimum wages | 1,303,800 | 694,407 | 1,998,207 |
| MWA overtime | 6,031,092 | 372,428 | 6,403,520 |
| FLSA overtime | 11,301 | 686,734 | 698,035 |
| Arbitration Credit | 0 | -380,584 | -380,584 |
| Rest Breaks | 946,828 | 1,156,626 | 2,103,454 |
| *Subtotals* | *8,293,021* | *2,529,611* | 10,822,632 |
| Double Shifts | | | 597,245 |
| | | **Totals** | **$11,419,877** |

| Settlement Allocation Steps and Figures | | | |
|---|---|---|---|
| 1. Start with the Judgment 11/98 to 6/01 figures: | | | *8,293,021* |
| 2. Add 78% of the Judgment 7/01 to 12/03 figures (78% of $ 2,529,611) | | | *1,973,097* |
| 3. Add 70% of the Judgment double shift figure (70% of $ 597,245) | | | 418,072 |
| 4. *Get the Subtotal of Steps 1 through 3* | | | 10,684,189 |
| 5. Calculate the non-opt-in reduction, *i.e.,* multiply by 22% the step 4 damages attributable to individuals as to whom an FLSA consents are not filed with the Court (herein it is estimated that 40% of damages are for non-opt-ins) | | | -$940,209 |
| 6. *Get the Subtotal* (step 4 minus step 5) | | | 9,743,980 |
| 7. Multiply step 6 figure by factor to make it equal the $8,400,000 settlement fund | | | 0.862070696 |
| **The settlement fund figure** | | | 8,400,000 |

**Individual Hypothetical --**
Assume Jose Veraz is a non-opt-in whose judgment total was $ 5,250, comprised of $ 4,000 for pre-7/01, $ 1,000 for post 7/01 and $250 in double shift damages.

| Judgment for Mr. Veraz | | | **$5,250** |
|---|---|---|---|
| 1. Start with the $ 4,000 Judgment 11/98 to 6/01 figure | | | 4,000 |
| 2. Add 78% of the $ 1,000 Judgment 7/01 to 12/03 figures | | | 780 |
| 3. Add 70% of the $ 250 Judgment double shift figure | | | 175 |
| 4. *Get the Subtotal of Steps 1 through 3* | | | 4,955 |
| 5. Calculate the non-opt-in reduction: multiply 4,995 by 78% | | | -1,090 |
| 6. *Get the Subtotal* (step 4 minus step 5) | | | $3,865 |
| 7. Multiply step 6 by classwide factor (step 7 above; hypothetical figure used here) | | | 0.862070696 |
| **Settlement Amount for Mr. Veraz** | | | **$3,332** |

| If, hypothetically, Mr. Veraz opted in for FLSA purposes (and there was no step 4 reduction) | | | |
|---|---|---|---|
| ($ 4,955 times 0.862070696 multiplier) | | | **$4,272** |

**EXHIBIT 2**

Michael J. Mueller
Joel M. Cohn
Nicole M. Mueller
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC  20036
Telephone:  (202) 887-4000
Fax:  (202) 887-4288

William Rutzick, WSBA #11533
Kathryn Goater, WSBA #9648
Schroeter, Goldmark & Bender
Central Building, Suite 500
810 Third Avenue
Seattle, Washington  98104
Tel.: 206/622-8000; Fax:  206/682-2305

David N. Mark, WSBA #13908
Law Office of David N. Mark
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel.: 206/340-1840; Fax. 206/340-1846

)
)    **STIPULATION REGARDING**
)    **TOLLING OF STATUTES OF**
)    **LIMITATIONS**
)
)
)
)
)

The undersigned parties, through their legal representatives, hereby agree as follows.

1.  Throughout this agreement, "the anticipated lawsuit" refers to the proceeding the parties anticipate will be filed in the United States District Court for the Eastern District of Washington including allegations that certain of defendants' policies and practices at their Pasco facility violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and Washington state law in a

STIPULATION RE TOLLING OF LIMITATIONS PERIODS - 1

1   manner similar to claims made and adjudicated in *Alvarez et al. v. IBP, inc.*, No.

2   CT-98-5005-RHW (E.D. Wash.), and *Chavez et al. v. IBP, inc.*, No. CT-01-5093-

3   RHW (E.D. Wash.).

4       2.  Throughout this agreement, "plaintiffs" refers to those current and

    former employees of defendants' Pasco, Washington meat-processing facility

5   who may participate in the anticipated lawsuit as named plaintiffs, and/or

6   putative opt-in plaintiffs pursuant to 29 U.S.C. §§ 216(b), and/or putative class

7   members pursuant to Federal Rule of Civil Procedure 23.

8       3.  Throughout this agreement, "defendants" refers to Tyson Foods, Inc.,

9   and Tyson Fresh Meats, Inc.,

10      4.  William Rutzick, Kathryn Goater, and David Mark, and their respective

11  law firms (collectively "plaintiffs' counsel"), hereby represent that they are

    authorized to act on behalf of one or more plaintiffs and, absent this agreement,

12  would have filed the anticipated lawsuit as early as September 6, 2005.

13      5.  Beginning before this agreement was executed, plaintiffs' counsel and

14  defendants have been engaged in negotiations relating to the claims made and

15  adjudicated in *Alvarez* and *Chavez*, and similar or additional claims that may be

16  brought as part of the anticipated lawsuit, with the goal of entering into a

17  negotiated resolution to avoid further litigation regarding such issues.  The

18  parties hereby represent that they will continue to negotiate in good faith in an

    attempt to reach such an agreement and avoid further litigation, in whole or in

19  part.

20      6.  In consideration of the above, defendants hereby agree that the statute

21  of limitations for any claims that may be included in the negotiated resolution

22  will be tolled from September 6, 2005 until such time as a proposed settlement is

23  filed with the district court.

24      7.  Should the parties be unable to reach a negotiated resolution of the

25  claims that may be included in the lawsuit, defendants nonetheless agree that the

    statute of limitations for any claims that are included in the complaint in the

anticipated lawsuit will be tolled from September 6, 2005 until such time as the complaint is filed with the district court.

DATED this _____ day of September, 2005

SCHROETER GOLDMARK & BENDER

AKIN GUMP STRAUSS HAUER & FELD LLP

William J. Rutzick, WSBA# 11533
Kathy Goater, WSBA# 9648

Michael J. Mueller
Joel M. Cohn
Nicole M. Mueller

LAW OFFICE OF DAVID N. MARK

David N. Mark, WSBA# 13908
Attorneys for Plaintiffs

STIPULATION RE TOLLING OF LIMITATIONS PERIODS - 3

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE NUNEZ, et al.,  Plaintiff,<br>v.<br>TYSON FRESH MEATS, INC.    Defendant. | No.  CV-06-5041-LRS<br>NOTICE OF PROPOSED CLASS<br>ACTION SETTLEMENT |

TO:    Current and Former Pasco Plant Slaughter, Processing and Hides Workers:

You are a member of this class action lawsuit. It involves claims for unpaid pre-shift, meal break and post-shift work, paid rest breaks and time between double shifts. It includes (a) September 2002 to December 2003 work by individuals who started working for Tyson after May 2002, and (b) work in 2004, 2005 and until May 6, 2006.

### The Settlement

The parties have agreed to settle *Chavez v. IBP* case and this *Nunez v. Tyson* case. If you are part of the *Chavez* case, then you will be receiving a *Chavez* notice of settlement in this envelope.[1]

This Notice discusses the *Nunez* Settlement, the approval/objection process and what you need to do to receive a settlement check in *Nunez*. The plaintiffs are asking the Court to approve the following settlement terms:

- $  300,000 to the *Nunez* class members, to be paid (1) for work between September 2, 2002 and December 31, 2003 to workers whose employment began after May 2002, and (2) straight knife users for work between January 2004 and May xxx_, 2006. [date agreement signed]
- Payment of non-production minutes for the next three years as follows:  11 minutes – processing straight knives; slaughter/hides basement straight knives -- 10 minutes; all other slaughter/processing line workers required to use more than minimal protective equipment – 9 minutes; hides main floor – 6 minutes. (Currently Tyson is paying most production workers 9 minutes non-production time, so, for example, processing straight knife users will be entitled to an additional 2 minutes).
- No attorney fees are being requested in connection with this settlement. The attorneys are receiving fees in connection with the *Chavez* settlement.

### What You Can Do

If you are eligible to receive a check under the *Nunez* agreement, **you must return the address confirmation postcard enclosed herein** or otherwise contact the lawyers – **checks will not be sent without address confirmation.**

If you want to exclude yourself from this lawsuit you must return the address confirmation postcard with **"EXCLUDE"** written on it or otherwise contact the attorneys, informing them you want to be excluded.

If you want to object or tell the Court what you think of the settlement, there will be a hearing to decide whether to approve the settlement. It will be held on _____, 2006, at __a.m./p.m., in the United States Courthouse, 825 Jadwin Avenue in Richland, Washington. **You are not required to attend, but you can attend if you want. If you want to object to the settlement you must either attend the settlement hearing or object by writing to the *Chavez and Nunez***

---

[1]  The *Chavez* case resulted in a plaintiffs' judgment for $ 11.4 million in July 2005 and is being settled for a payment of up to $ 8.4 million to the class, plus up to $ 1.8 million in attorney fees. *See Chavez* Notice. By September 2002, the start of the *Nunez* damages period, defendants made changes in company policy that greatly reduced the value of the plaintiffs' claims.

*v. Tyson* **Class Actions address below.**  All letters received prior to the hearing date will be given to the Court.  This notice is a summary.  Complete settlement papers may be reviewed during normal business hours at the Court Clerk's office.  You may contact an attorney of your own, if you want to.

## IT IS VERY IMPORTANT THAT YOU COMPLETE AND RETURN THE ENCLOSED POSTCARD IF YOU WANT TO RECEIVE MONEY FROM THIS SETTLEMENT.  IF THE ATTORNEYS DO NOT HAVE ADDRESS CONFIRMATION YOU WILL NOT BE MAILED A SETTLEMENT CHECK.

**If you lose the postcard, you may mail your address and telephone number to the attorneys.**  All writings – address information and any settlement objections or comments -- should be sent to:

> ***Chavez and Nunez v. Tyson* Class Actions**
> **810 Third Avenue, Suite 500**
> **Seattle, WA 98104**

You may also call the attorneys at:  (206) 622-8000.
Please, do not call the Court.

Clerk of Court

[Label]

If the label above is incorrect, please provide your:
(Si la información arriba no es correcto, escriba su):
_____ (name)(nombre)

_____ (street/apt.)/calle/apt.)

_____ (city/state/zip)(cd./edo./codigo)

### *Chavez* and *Nunez v. Tyson* Class Actions
### 810 THIRD AVENUE, SUITE 500
### SEATTLE, WA 98104

My telephone number is:
Mi numero de teléfono es:  (__ __ __) __ __ __ - __ __ __ __

The last four numbers of my Social Security number are:
Los últimos cuatros dígitos de mi numero de Seguro Social son:

X X X- X X- ____ ____ ____ ____

If your address on the other side is a "P.O.Box" give us your home address:
Si su dirección al otro lado es una "P.O. Box" da su dirección de casa:

_____ (street/apt.)/calle/apt.)

_____ (city/state/zip)(cd./edo./codigo)

I certify the above is correct. / Certifico que la ariba es correcta.

_____
Sign/Firme
**Return this card right away; Devuelva esta tarjeta ahora misma.**
Send us your new address if you move before getting your check;
Avísenos de su nueva dirección si se muda antes de reciba su cheque.